# AFFIDAVIT OF SPECIAL AGENT BRIAN P. HIGGINS IN SUPPORT OF AN APPLICATION FOR A COMPLAINT AND ARREST WARRANT

I, Brian P. Higgins, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I am employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and have been so employed since 2009. I am responsible for the investigation of violations of and the enforcement of the federal firearms laws. I am presently assigned to the Bridgewater Field Office and specifically focus on crimes of violence perpetrated by felons and otherwise prohibited persons who illegally possess and/or purchase firearms, criminal organizations, gangs and narcotics trafficking groups in urban areas plagued by crime. Additionally, I have participated in numerous investigations focusing on narcotics trafficking, street gangs, and illegal firearms. As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.[1]

2.  During my tenure with the ATF, I have written and/or participated in the execution of numerous state and federal search warrants, and have debriefed many defendants, informants, and witnesses with personal knowledge regarding firearms and narcotics trafficking and the operation of firearms and/or narcotics traffickers. I have also received training through my position as an ATF Special Agent involving firearms and narcotics trafficking.

---

[1] On July 28, 2016, in connection with an extension of a civil restraining order in an unrelated domestic matter, Judge Marianne C. Hinkle made an adverse credibility finding against the affiant. *Higgins v. Higgins,* Docket No. 1653R00364, Woburn District Court.

3. Additionally, I have had extensive experience investigating firearms and drug traffickers. Since joining the ATF, I have participated in numerous gun trafficking investigations both as a case agent, acting in an undercover capacity, and in a subsidiary role. I have also personally participated in many aspects of narcotics investigations, including surveillance, using confidential informants and cooperating witnesses, and writing and executing search warrants.

4. Based on my training and experience, I am aware that 18 U.S.C. § 111 makes it a federal offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with a federal officer while that officer is engaged in the performance of official duties, with higher statutory maximum terms of imprisonment if, during such acts, the individual intended to commit another offense, used a deadly or dangerous weapon, or inflicted bodily injury.

## PURPOSE OF AFFIDAVIT

5. This affidavit is being submitted in support of an application for the issuance of a criminal complaint against and arrest warrant for Tykeam JACKSON ("JACKSON").

6. As set forth below, I have probable cause to believe, and I do in fact believe, that on or about July 27, 2020, while members of the Massachusetts State Police ("MSP"), at least one of whom was also acting as a deputized federal law enforcement officer, and other law enforcement officers, were attempting to perform their duties as part of an ongoing federal firearms-related investigation, JACKSON violated 18 U.S.C. § 111 in Avon, Massachusetts, when he operated a vehicle with such force that a deputized federal law enforcement officer was dragged for several feet and subsequently thrown to the ground, thereby assaulting him and otherwise interfering with his law enforcement duties.

7.      The information contained in this affidavit is based on my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses.   The dates and times in this affidavit are approximate.   This affidavit is submitted for the limited purpose of establishing probable cause for the issuance of the requested criminal complaint and arrest warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE TO BELIEVE THAT A FEDERAL CRIME WAS COMMITTED

8.      Sean P. Healy is a Trooper with the MSP currently assigned to the ATF as a Task Force Officer ("TFO") ("TFO Healy").   TFO Healy has been an ATF TFO for approximately 4 years and with the Massachusetts State Police for approximately 14 years.   He was initially sworn in on December 7, 2016, and reapproved on February 6, 2019.   During that time, TFO Healy has been involved in numerous investigations of violations of federal firearms, explosives, and controlled substance laws.   Currently, TFO Healy is assigned to a group in the Boston Field Division of the ATF that, in part, works with other federal, state and local police departments in and around the City of Boston to investigate and prosecute violations of the federal firearms, explosives, and controlled substance laws.   In his capacity as an ATF TFO, TFO Healy has been sworn in as a Special Deputy United States Marshal, conducted interviews, executed search warrants and made arrests.   TFO Healy is in regular communication with his TFO supervisor at the ATF, along with other federal law enforcement officers on the task force and with other ATF agents assigned to different field offices.

9.      During July 2020, TFO Healy received information from Special Agents assigned to the ATF Field Office in Harrisburg, Pennsylvania regarding Tykeam JACKSON, date of birth XX-XX-1995, with a residential address of 64 Winter Street, Brockton, Massachusetts, a subject

they were investigating for multiple violations of federal firearms laws. As part of the ongoing ATF firearms-related investigation, TFO Healy was instructed to collect intelligence on JACKSON and did so.

10. Based on the ongoing ATF firearms-related investigation, JACKSON is a known Castlegate Road street gang member. The Castlegate Road street gang is a violent criminal street gang operating in various communities in and surrounding the city of Boston, Massachusetts.

11. I have reviewed JACKSON's criminal record as maintained by the Massachusetts Criminal History Systems Board. According to those records, JACKSON is a convicted felon and currently on Superior Court Probation resulting from an armed robbery conviction in Suffolk Superior Court.

12. I am aware that records indicate that a Ford Fusion bearing Pennsylvania Registration LGM8496 is registered in JACKSON's name.

13. On July 26, 2020, as part of the ongoing ATF firearms-related investigation, TFO Healy was informed by an ATF Special Agent from the Harrisburg, Pennsylvania ATF Field Office that JACKSON had been observed in Pennsylvania operating a Mitsubishi Outlander bearing Massachusetts Registration 9GW122, and that investigators believed that JACKSON had left the Pennsylvania area and was presently on his way back to Massachusetts.

14. Later that day (July 26, 2020), TFO Healy learned through license plate reader hit reports that a Mitsubishi Outlander bearing Massachusetts Registration 9GW122 was in Massachusetts on that day.

15. On Monday, July 27, 2020, at approximately 5:30 p.m., as part of the ongoing ATF firearms-related investigation, TFO Healy and other investigators conducted surveillance of

JACKSON at his residence at 64 Winter Street, Brockton, Massachusetts. TFO Healy was acting in his capacity as both an MSP Trooper and a TFO: as a member of the ATF's Boston Task Force, in connection with the ongoing ATF firearms-related investigation, TFO Healy had been instructed to collect intelligence regarding JACKSON.

16. At approximately 5:45 p.m., JACKSON exited the rear door of his residence. He was wearing blue jeans, a white t-shirt, and white sneakers, and was carrying a dark-colored gym-style bag over one shoulder. JACKSON walked to a Ford Fusion bearing Pennsylvania Registration LMG8496 located in a parking lot adjacent to his residence, scanned the parking lot and surrounding area, and subsequently placed the bag in the trunk of the Ford Fusion. Based on his training and experience, TFO Healy believed JACKSON to be conducting counter-surveillance of the area. JACKSON then walked into a convenience store located directly across the street from his residence. After a few minutes, JACKSON left the store and returned to his residence. A short time later, JACKSON exited through the rear door of his residence, carrying a dark-colored backpack. JACKSON opened the passenger side rear door of the Ford Fusion and placed the dark-colored backpack inside of the vehicle. JACKSON walked around the parking lot and again scanned the parking lot and surrounding area. Based on his training and experience, TFO Healy believed JACKSON to again be conducting counter-surveillance of the area. JACKSON went in and out of the vehicle several more times, and subsequently drove out of the parking lot.

17. TFO Healy and investigators followed JACKSON as he drove on Route 28 into the town of Avon, Massachusetts. TFO Healy observed that the vehicle was traveling 52 miles per hour in a zone with a posted speed limit of 40 miles per hour, and subsequently activated his emergency light and conducted a motor vehicle stop of JACKSON.

18. TFO Healy and investigators approached the vehicle. JACKSON rolled down the window located on the driver's side of the vehicle. TFO Healy asked JACKSON for his license and registration, and informed him that he had been stopped for driving at a rate above the posted speed limit. JACKSON appeared visibly nervous and shaking while removing his driver's license from his wallet and handing it to TFO Healy. TFO Healy asked JACKSON where he was currently living. JACKSON stated that he had been living with his mother for approximately seven years in Brockton, Massachusetts.

19. I am aware that a previous query of JACKSON revealed that JACKSON had a canceled driver's license status in Massachusetts.

20. Based on all of the information and circumstances available to TFO Healy and investigators, and the fact the JACKSON was a Massachusetts resident but did not possess a valid Massachusetts driver's license, TFO Healy asked JACKSON to exit the motor vehicle. As TFO Healy attempted to open the door of the vehicle, JACKSON placed his foot on the brake and shifted the vehicle into drive. TFO Healy placed his right hand inside of the open window of the vehicle, placed his hand onto JACKSON's shoulder, and instructed JACKSON not to flee. JACKSON hesitated and then accelerated the vehicle at a high rate of speed.

21. The moving vehicle dragged TFO Healy for several feet until its momentum caused TFO Healy to be thrown to the ground with such force that his firearm was dislodged from his hip. TFO Healy's head and body hit the ground forcefully, and TFO Healy's firearm slid for approximately 20 feet.

22.     TFO Healy and investigators began to pursue JACKSON, who was at that point fleeing at a high rate of speed.  JACKSON entered the parking lot of a Wal-Mart located at 30 Memorial Drive, Avon, Massachusetts.

23.     Investigators briefly lost sight of JACKSON, and subsequently observed JACKSON swerve around several vehicles and pedestrians and accelerate out of the Wal-Mart parking lot at a high rate of speed.  JACKSON then turned right onto Route 28 and, ignoring traffic signals, started driving on the wrong side of the road in an attempt to drive around other vehicles.  He made numerous turns before entering Route 24, heading northbound.  Once on Route 24, JACKSON's vehicle accelerated to approximately 100 miles per hour in the breakdown lane.  After he attempted to cross all three travel lanes, JACKSON lost control of the vehicle and crashed head-on into the guardrail.  The vehicle spun out and came to a stop between the second and third travel lanes.

24.     JACKSON exited the vehicle and ran across the southbound travel lanes of Route 24, and was almost struck several times by oncoming traffic.  After briefly losing sight of JACKSON, members of law enforcement gathered to search for him.

25.     At approximately 7:40 p.m., while driving in Randolph, Massachusetts, Massachusetts State Trooper Jason Abramoski ("Trooper Abramoski") observed a person subsequently identified as JACKSON running into and obstructing traffic on Canton Street, a heavily traveled roadway, causing frustrated passing motorists to beep their horns and point at JACKSON.

26.     Trooper Abramoski activated his emergency lights to get JACKSON's attention and exited his cruiser while identifying himself as a law enforcement officer.  Concerned for his

own safety, Trooper Abramoski withdrew his firearm while verbally commanding JACKSON to place his hands in the air. JACKSON complied and was directed to the ground by Trooper Abramoski. Trooper Abramoski approached JACKSON and placed him into custody using handcuff restraints. Trooper Abramoski observed JACKSON to be out of breath and sweating, with scrapes on his hands and bare feet. Trooper Abramoski believed these injuries to be consistent with those that might have occurred from running through the woods.

27. JACKSON stated that he was confused and did not know why the police were chasing him. JACKSON was provided his *Miranda* warnings, which he indicated he understood. JACKSON was searched, placed into an MSP vehicle, and transported to the MSP H-7 Milton Barracks located in Milton, Massachusetts.

28. JACKSON was later transported to Beth Israel Deaconess Hospital in Milton, Massachusetts to be treated for minor leg injuries sustained during the motor vehicle crash. There, after JACKSON received initial treatment, I informed JACKSON that he was in custody and under arrest by the MSP, and read him his *Advise of Rights and Waiver* via ATF E-Form 3200.4. I explained to JACKSON why he was pulled over and subsequently arrested. JACKSON stated that he remembered being pulled over, being asked for his license and registration, and being asked how long he had lived at his residence. I told JACKSON that as soon as TFO Healy ordered JACKSON to exit the vehicle, JACKSON did not comply and instead accelerated the vehicle and drove away. In sum and substance, JACKSON said that at that point, he was scared. JACKSON said that he remembered the time period immediately before he crashed the vehicle, including driving at a high rate of speed on the highway.

29. JACKSON admitted having felony convictions and that he was currently on probation.

30. I asked JACKSON if he had been recently out of the state of Massachusetts. JACKSON initially said no, and subsequently said he had been in Pennsylvania. JACKSON later said that he was in York, which I know to be a town in Pennsylvania.

31. TFO Healy subsequently sought medical attention and was evaluated at South Shore Hospital in Weymouth, Massachusetts. Medical testing revealed that TFO Healy had bulging disks in his back, a shoulder injury, and minor injuries on his knees and elbows.

## CONCLUSION

32. Based on the above, I have probable cause to believe, and I do in fact believe, that on or about July 27, 2020, JACKSON violated 18 U.S.C. § 111 by forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with a federal officer while that officer was engaged in or on account of the performance of his official duties.

33. I respectfully request that the Court issue a criminal complaint charging JACKSON with this crime and an arrest warrant for JACKSON.

Signed electronically and sworn to telephonically in accordance with Federal Rule of Criminal Procedure P. 4.1 on August 27, 2020.

*Brian P. Higgins*

BRIAN P. HIGGINS

Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives

Electronically subscribed and telephonically sworn to before me this __ day of August, 2020.   **Aug 27, 2020**

*Judith Gail Dein*

HONORABLE JUDITH G. DEIN

UNITED STATES MAGISTRATE JUDGE

10