```
                                          Volume:  I
                                          Pages:  1-29
                                          Exhibits: None
```

                    COMMONWEALTH OF MASSACHUSETTS
SUFFOLK, SS.                         SUPERIOR COURT DEPARTMENT
                                        OF THE TRAIL COURT

* * * * * * * * * * * * * * * * * *
                                  *
COMMONWEALTH OF MASSACHUSETTS     *
                                  *
v.                                * Docket No.  1584CR1278
                                  *
TYKEAM JACKSON                    *
                                  *
* * * * * * * * * * * * * * * * * *

               CHANGE OF PLEA
               BEFORE THE HONORABLE ROBERT TOCHKA

APPEARANCES:

FOR THE COMMONWEALTH OF MASSACHUSETTS:
Suffolk County District Attorney's Office
One Bulfinch Place
Boston, Massachusetts 02114
     BY:  Adrien Bispham, A.D.A.

FOR THE DEFENDANT:
Committee for Public Counsel Services
44 Bromfield Street
Boston, Massachusetts 02108
     BY: JOSHUA REISLER-COHN, ESQ.

Also present:
Probation Officer Ellison

                    Boston, Massachusetts
                    Room 730
                    April 23, 2018

Christine D. Blankenship
Official Court Reporter

GOVERNMENT
EXHIBIT
1

PENGAD 800-631-6989

I N D E X

                                        PAGE:

Proceedings                                3

1    (Court called to order.)

2    (Defendant present/not present.)

3         THE CLERK:  Your Honor, numbers eight and nine on

4    today's list, Commonwealth versus Tykeam Jackson,

5    docket number 13-11012 and docket number 15-11278.  The

6    2013 matter is on for a final surrender, and the 2015

7    case is on for a change of plea.  Could the parties

8    please identify themselves for the record?

9         MR. BISPHAM:  Good afternoon, Your Honor.  Adrien

10   Bispham for the Commonwealth.

11        MR. RAISLER-COHN:  And Josh Raisler-Cohn on behalf

12   of Mr. Jackson, who's present.

13        THE COURT:  Good afternoon, sir.

14        THE DEFENDANT:  Good morning.  Oh, good afternoon.

15        THE COURT:  Do you want me to inquire of your

16   client?

17        MR. RAISLER-COHN:  Yes, if I may approach.

18        THE CLERK:  Mr. Jackson, do you now offer to

19   change your plea to two indictments?

20        THE DEFENDANT:  Yes.

21        THE CLERK:  And as to indictment 15-11278 offense

22   01 charging you with armed robbery, how do you now

23   plea?

24        THE DEFENDANT:  Guilty.

25        THE CLERK:  And offense two which charges you with

1     armed carjacking.

2          MR. RAISLER-COHN:  I think we're just doing count

3     one because carjacking and robbery are duplicative.

4          THE CLERK:  Do you now offer to change your plea

5     to one indictment?

6          MR. RAISLER-COHN:  Yes.

7          THE CLERK:  And to docket number 15-11278 so much

8     as charges you with armed robbery, how do you no plead?

9          THE DEFENDANT:  Guilty.

10         THE CLERK:  Please raise your right hand.

11                    TYKEAM JACKSON, sworn

12         THE COURT:  Sir, why don't you step over here with

13    your attorney and have a seat in the witness box.

14         THE CLERK:  Do you want me to swear in the

15    probation officer?

16         THE COURT:  Yes.

17                    PROBATION OFFICER, sworn

18         THE COURT:  The probation violation is a new

19    offense?

20         THE PROBATION OFFICER:  I'm sorry?

21         THE COURT:  The probation violation new?

22         THE PROBATION OFFICER:  Yes, not this one.

23         MR. BISPHAM:  The subject of the new violation is

24    a Roxbury case that was since dismissed for want of

25    prosecution.

```
 1              THE COURT:  All right, sir, tell me your name.
 2              THE DEFENDANT:  Tykeam Jackson.
 3              THE COURT:  Mr. Jackson, how old are you?
 4              THE DEFENDANT:  Twenty-two.
 5              THE COURT:  How far in school did you go to?
 6              THE DEFENDANT:  I got my GED.
 7              THE COURT:  And where did you go to high school?
 8              THE DEFENDANT:  Multiple BPS schools.
 9              THE COURT:  If at any time you don't understand a
10         question I ask, you let me know and I'll rephrase it.
11         Anytime I don't understand your response, I'll let you
12         know.  If you need to speak with your attorney, can ask
13         me and go outside for more privacy in the hallways; do
14         you understand?
15              THE DEFENDANT:  Yes.
16              THE COURT:  So do you have any children?
17              THE DEFENDANT:  No.
18              THE COURT:  And are you married?
19              THE DEFENDANT:  No.
20              THE COURT:  What was the last job you have?
21              THE DEFENDANT:  I currently work at Working Gear
22         in Quincy.
23              THE COURT:  What do you do there?
24              THE DEFENDANT:  I'm a marketing assistant.
25              THE COURT:  Now, I have to ask everybody this
```

1      question.  Have you ever suffered from any mental

2      illness or any mental condition?

3              THE DEFENDANT:  No.

4              THE COURT:  Are you aware of any mental illness or

5      any mental condition you're now suffering from?

6              THE DEFENDANT:  No.

7              THE COURT:  Have you consumed any alcohol in the

8      past 24 hours?

9              THE DEFENDANT:  No.

10             THE COURT:  Any drugs in the past 24 hours?

11             THE DEFENDANT:  No.

12             THE COURT:  Any medication the past 24 hours?

13             THE DEFENDANT:  No.

14             THE COURT:  Do you understand by pleading guilty

15     here, you're giving up your right to have a trial and

16     have a jury decide in terms of your guilt or innocence?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And do you understand if you went to

19     trial you wouldn't have to prove anything.  So for

20     example you wouldn't have to take the witness stand,

21     you wouldn't have to call witnesses, the jury couldn't

22     hold it against you.  Instead, it's the Commonwealth

23     that has to prove guilty of each element of the charge

24     beyond a reasonable doubt.  Do you understand that?

25

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand you have the right

3     to be tried by a jury 12 people who would be of

4     selected.  You have the right to participate in the

5     selection of the jury.  You could not be found guilty

6     unless the Commonwealth convinces all 12 of the jurors

7     that you were guilty beyond a reasonable doubt.  Do you

8     understand this?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Also, sir, do you understand that you

11     have the right to be tried by a judge instead of a jury

12     and instead the judge would find not you guilty unless

13     the Commonwealth produced that judge beyond a

14     reasonable doubt that you are guilty of the charge.  Do

15     you understand this?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Now, Mr. Jackson, do you understand if

18     you went to trial you would have the right to confront

19     your accusers and any other witnesses who testified by

20     you facing them and your attorney questioning them.  Do

21     you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you also understand that if you

24     went to trial you would have the right to call your own

25     witnesses, present your own evidence and if you wanted

1      to testify on your own behalf, do so; do you understand

2      that?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Do you understand by pleading guilty

5      here today you are giving up your right to pursue any

6      arguments or motions your attorney may have made or

7      filed on behalf of this case?

8            THE DEFENDANT:  Yes, I understand.

9            THE COURT:  Do you also understand that you've

10     giving up your right to appeal any rulings or decisions

11     a judge may have already made in this case?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Are you willing to give up each of

14     these rights I've just explained to you?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Next I'm going to hand you this

17     document.  It's entitled, "Defendant's Waiver of Rights

18     Form."  Have you seen that document before?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Did you read it?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Did you go over it with your attorney?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Do you understand it?

25           THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand it sets forth in

2     writing what you and I have been talking about here,

3     namely, your willingness to waive your constitutional

4     rights and your statutory rights and plead guilty to

5     this indictment?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Is that your signature -- and flip it

8     over, please.  Is that your signature on the back?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Did you sign it voluntarily?

11         THE DEFENDANT:  Yes.

12         THE COURT:  By signing it, do you understand

13    you're telling me in writing that you're aware of the

14    rights that are explained in that form and that you

15    understand those rights and that you are voluntarily

16    waiving those rights?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Why don't I take that back from you.

19    Did you go over the -- it's one charge he's pleading

20    to, right?  Did you go over the charge -- the

21    indictment with your attorney?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And did he explain to you the elements

24    the Commonwealth would have to prove beyond a

25    reasonable doubt?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And do you understand the elements?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Do you understand the maximum penalty

5     in the case?

6          THE DEFENDANT:  Yes.

7          THE COURT:  What's the maximum penalty?

8          THE DEFENDANT:  Life I believe, right, or 20

9     years.  One of them.

10         THE COURT:  That's correct.  There's no mandatory

11    minimum here?

12         MR. RAISLER-COHN:  No.

13         THE COURT:  And do you understand -- what's the

14    sentence?

15         MR. BISPHAM:  The sentence would be three years'

16    probation.

17         THE COURT:  So do you understand if I impose that

18    period of probation you're going to be subject to the

19    terms and condition that are imposed.  They include not

20    committing any other crime, reporting to probation

21    officer.  Do you understand?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you understand that if you are

24    later found in violation, a judge could sentence you up

25    to that maximum penalty --

1    THE DEFENDANT:  Yes.

2    THE COURT:  Next I have to advise you that -- it's

3    called the armed career criminal statute.  So if you

4    are convicted of another violent crime or a serious

5    drug offense in the future under the statute, you'll

6    face a substantial prison term.  That is, you will face

7    three to fifteen years in state prison if you are

8    previously convicted of one violation or one serious

9    drug offense.  Do you understand that?

10    THE PROBATION OFFICER:  Yes.

11    THE COURT:  Next, you would face ten to fifteen

12    years here if you are previously convicted of two

13    violent or two serious drug offenses.  Do you

14    understand that?

15    THE DEFENDANT:  Yes.

16    THE COURT:  Then you would face 15 to 20 years in

17    state prison if you were previously convicted of three

18    violent crimes or three serious drug offenses or any

19    combination of these offenses.  Do you understand that?

20    THE DEFENDANT:  Yes.

21    THE COURT:  Understanding this, do you still want

22    to plead guilty?

23    THE DEFENDANT:  Yes.

24    THE COURT:  So next I'll give you what are called

25    your immigration warnings.  I have to tell you that if

1    you are not a citizen I have to advise you my

2    acceptance of your guilty plea would have the

3    consequences of deportation, exclusion from admission

4    to the United States pursuant to the laws of the United

5    States.  Also, if the offense to which you are pleading

6    guilt is one under federal law one that presumptively

7    mandates your removal from the United States and if

8    federal officials decide to seek your removal, it is

9    practically inevitable that this conviction would

10   result in deportation or denial of naturalization under

11   the laws of the United States.  Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Has your attorney advised you of these

14   warnings?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Understanding this, do still wish to

17   change your plea?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Next, I'll ask the prosecutor give me

20   a statement of facts and ask you to listen to what he

21   says because these are the facts you are pleading to.

22         MR. BISPHAM:  Thank you, Your Honor.  If this case

23   were to proceed to trial, the Commonwealth would expect

24   to prove that on July 19th of 2015 the Boston Police

25   responded to a call for a report of a car having been

1    robbed outside of the liquor store on Cedar Street and

2    Washington Street in Roxbury.  Upon arrival, the

3    officers spoke with an individual later identified as

4    ███████████████    who indicated that he was in his car when

5    he observed two individuals who walked past his car and

6    enter the liquor store at the corner.  He described one

7    of the individuals as slim with glasses wearing a white

8    shirt and red and black shorts.  The second person was

9    a heavy black male with black shirt, black boots and

10   sweatpants.  Shortly thereafter, the same two suspects

11   exited the store and walked by the car again at which

12   point they then approached -- one person approached the

13   passenger side, the other person approached the

14   driver's side, demanded the occupants to get out the

15   car threatening to shoot them.  The witnesses described

16   one person having a gun and the other person having a

17   knife.  They got out of the car.  ██████████    was in

18   the driver's seat.  He had a passenger in the front

19   passenger seat.  They exited the vehicle.  The two

20   suspects got into the vehicle and then fled towards

21   Washington Street.

22       At approximately 6:50 p.m., the same day officers

23   were called to 296 Seaver Street where Massachusetts

24   State Police had received a LoJack hit relative to that

25   same stolen car.  Detectives recovered and processed

1    that car. They recovered fingerprints from the exterior

2    driver's side window which were individualized to the

3    defendant, Tykeam Jackson, and one other print that was

4    identified as Sean Barry.  Detectives also recovered

5    video from the liquor store of the corner which

6    depicted the two individuals who had entered the store.

7    The first suspect described was identified as Tykeam

8    Jackson by a Suffolk Superior Probation Officer, and

9    the second suspect was identified as Sean Barry by a

10   Youth Violence Strikeforce officers of the Boston

11   Police.

12        A warrant was put out the arrest of Mr. Jackson.

13   When he was arrested, he had glasses in his possession

14   that were similar to the ones being worn by the person

15   in the video.  Additionally, Mr. Jackson participated

16   in an interview with detectives after he was arrested

17   admitting to involvement in the incident and

18   identifying Barry as a second suspect but denying

19   possession of any firearm during the incident. There

20   was no firearm or gun found that was recovered and

21   essentially those are the facts, Your Honor.

22        THE COURT:  Okay, sir.  Did you hear those facts?

23        THE DEFENDANT:  Yes.

24        THE COURT:  By pleading guilty, you're telling me

25   that you committed those facts and those facts are

1     true.  Are those facts true?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Anyone force you to plead guilty?

4          THE DEFENDANT:  No.

5          THE COURT:  Anybody promise you anything to get

6     you to plead guilty?

7          THE DEFENDANT:  No.

8          THE COURT:  Are you satisfied with your attorney's

9     advice?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you believe he's acted in your best

12     interest?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Counsel, have you discussed the

15     possible c consequences with your client?

16          MR. RAISLER-COHN:  I have.

17          THE COURT:  Sir, I have to tell you that by

18     pleading guilty, you will be required to submit a

19     sample of your saliva for the Massachusetts DNA

20     database.  do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  understanding that you will want to

23     plead guilty?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Now, have you been confused about

1    anything I've said to you so far?

2         THE DEFENDANT:  No.

3         THE COURT:  understanding everything I've said to

4    you, do you still wish to plead guilty to this offense?

5         THE DEFENDANT:  Yes.

6         THE COURT:  The plea is being made freely,

7    willingly, voluntarily and knowingly.  Probation can go

8    to the podium.              Sir, you're going to

9    stipulate or admit to a violation; is that right?

10        THE DEFENDANT:  Yes.

11        THE COURT:  So by doing that, you understand

12   you're giving up your right to face or confront the

13   witnesses?

14        THE DEFENDANT:  Yes.

15        THE COURT:  And do you understand you could have

16   witnesses in your own defense?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Probation.

19        THE PROBATION OFFICER:  This is a notice dated the

20   initial was December 7, 2017.  It's being violated for

21   an A and B on a family or household member which was

22   out of the Roxbury BMC.  He was arraigned on August 28,

23   2017.  Also, failure to complete his community service

24   hours in total.  He had at that time it was 80.  He has

25   been given credit for 32 hours.

1    THE COURT:  And what was the violation?

2    THE PROBATION OFFICER:  From my understanding, it

3  was an argument with his girlfriend and the

4  girlfriend's sister was present and it was her that

5  called the police at that time.  He was arrested on

6  site.  It was in the Dudley Street area of Roxbury.

7  The victim, I'm not sure if it's still his girlfriend,

8  but his girlfriend at the time denied any physical

9  altercations.  The officers obviously weren't there at

10  the time.  It's been dismissed in the district.

11    THE COURT:  That's not a stipulation to a

12  violation having an argument with anybody.

13    THE PROBATION OFFICER:  Well, he's agreeing that

14  was enough for him to be arrested.

15    THE COURT:  Even if he's agreeing that there's

16  enough, you haven't told me anything about -- all

17  you're saying is that there was an argument.  Nobody

18  goes to jail because of an argument.

19    THE PROBATION OFFICER:  Right, well, that was the

20  information that I was provided that he was arrested

21  and charged with this in the district and it's since

22  been disposed of, but. This two counts.

23    THE COURT:  Right, but you understand what I'm

24  saying?

25    THE PROBATION OFFICER:  I do, Your Honor.

 1          MR. BISPHAM:  Your Honor, given what I anticipate

 2     that disposition will be which ultimately I think

 3     probation is going to jointly recommend that we

 4     terminate Mr. Jacksons' probation given the fact that

 5     he's going to be going on probation on the new offense.

 6     I don't know if probation would consider withdrawing

 7     the violation that way, but.

 8          THE PROBATION OFFICER:  Probation is fine with

 9     that given that he's going to be on probation anyway.

10          THE COURT:  That's what I'm saying.  There's no

11     way that I can accept a stipulation to a violation of

12     probation.  In all frankness, there's a chance I would

13     just continue him on violation of probation.  It's up

14     to you what you want to do.

15          THE PROBATION OFFICER:  Probation will withdraw

16     the violation.

17          THE COURT:  The entire violation or just the

18     violation of new offense?

19          THE PROBATION OFFICER:  Just the new offense.  I

20     would like him to still do those community service

21     hours.  I do feel like that will be a benefit to him.

22          THE COURT:  Okay. That violation is -- you did not

23     perform the community service hours required of you?

24          THE PROBATION OFFICER:  Yes.

25          THE COURT:  I find you in violation of probation.

1        So why don't you go back to the table over there.

2            So he's on probation for what?

3            THE PROBATION OFFICER:  Larceny from a person.

4            THE COURT:  Now he's charged with robbery.  Is

5        that prior to the larceny?

6            THE CLERK:  There's two counts.  He was originally

7        in 2013 indicted on two counts of armed robbery.  He

8        got a house of correction sentence on the first.  On

9        the second count, it was reduced to larceny from a

10       person and was placed on probation for that and that is

11       what is the subject of the --

12           THE COURT:  So this is actually the third robbery?

13           MR. BISPHAM:  Yes, and the first one involved an

14       individual and a car as a well.  So I have some reports

15       if Your Honor would like to look at them.

16           THE COURT:  And what's the reason you're

17       recommending probation?

18           MR. BISPHAM:  The reason that we're recommending

19       probation, Your Honor, is because as you can see this

20       case has been opened since 2015.  So it's almost been

21       three years at this point in time. During the pendency

22       of that time, Mr. Jackson has been out for the majority

23       of the cases.  He's been consistently involved with

24       ROCA who have consistently gotten him internships, work

25       programs.  He's gone to cognitive behavioral therapy

1    there.  He's continued to still be engaged with ROCA

2    now.  I have met with him and his attorney on a number

3    of occasions and discussed his personal interests and

4    what he wants to do in the future.  He's currently

5    enrolled at school at Quincy College.  The job that he

6    is working for which is Working Gear, and obviously he

7    can tell you more about that actually is providing or

8    paying for him to go to school fully.

9        He essentially is -- has been on probation for

10   lack of --  he's been out for almost three year at this

11   point in time and all the work he's been doing, moving

12   out of the area where he was living before which is

13   Castlegate.  He is no longer living there.  He has his

14   own apartment in Allston.  He is independent and he's

15   attempting to sever ties from the people that he was

16   associating himself with that tended him to get into

17   the situations that brought us in before the Court

18   today.  He's met with the chief of my unit as well as

19   myself and has given all those conversations as well as

20   all the work that he's been going over the three year

21   period, admittedly as the facts it's indicated that he

22   may have picked up new offenses, it hasn't been perfect

23   but he has consistently going in a positive trajectory

24   such that at this point in time that it's the

25   Commonwealth's perspective and opinion and

1    recommendation that there would be no purpose served

2    incarcerating him further at this point in time given

3    that he's essentially turning his life around.  So

4    we're looking to give him the opportunity to be on

5    probation and to continue going to school and to

6    graduate.  He expects to graduate within two years and

7    continue working.  I think ultimately he wants to move

8    outside of Massachusetts, but again we want to give him

9    the opportunity to do that.  Obviously, these are

10   serious offenses for what he was on probation on or was

11   a serious offense and this is not necessarily

12   recommendation the Commonwealth would give but given

13   everything that he has presented to us it's something

14   we would strongly recommend to the Court.

15        THE COURT:  This was the same one that I heard the

16   case in the first session?

17        MR. RAISLER-COHN:  That's correct.

18        THE COURT:  Probation, what's your recommendation?

19        THE PROBATION OFFICER:  In regards to the plea

20   today?

21        THE COURT:  Yes.

22        THE PROBATION OFFICER:  Probation is on board with

23   the three years.  I've been working with Mr. Jackson

24   for about the last year and a half of the last three

25   years he's been on probation.  As the ADA stated a

1    couple of hiccups in the road, he's been doing fairly

2    well.  I've had many conversations with him about his

3    future in regards to the path he's going on.  He

4    reports as he's supposed to.  Even when he gets

5    frustrated, he is able to calm himself down and regroup

6    and come back and be more productive.  He has been

7    working at the shop he's at now for some time.  I got

8    an email not too long ago and stating that he's doing

9    really well and they're looking to hire him once he's

10   completed the internship.  I'm hoping that this is an

11   opportunity for him to keep on the straight and narrow

12   and do what he needs to do.  He's now much older, he's

13   a grown man now, he has his own responsibilities.  AS

14   you heard, he has his own apartment.

15          THE COURT:  What do you recommend in terms of

16   probation?

17          THE PROBATION OFFICER:  I would -- obviously that

18   he be working or in school at all times.  I do think

19   that he would benefit from positive anger management

20   just with his past, you know, just from reading his

21   file and just getting to know him.  I do see where

22   sometimes he gets overwhelmed.  He has a hard time

23   processing his feelings.  He's come a long way, but I

24   do think if not therapy than anger management, even if

25   it's just a check in would be beneficial to him.

 1          THE COURT:  Attorney Raisler-Cohn.

 2          MR. RAISLER-COHN:  Thank you, Your Honor. I think

 3     that in the last three years that I've known Mr.

 4     Jackson he has moved through and stepped out the other

 5     side of more challenging stuff than I certainly have

 6     ever had to deal with in my life and that most people

 7     that I know that ever had to do deal with in their

 8     lives.  He's done a tremendous amount of work.  I think

 9     what Ms. Ellison was just referring to in terms of the

10     changes that she's seen in his abilities to self-

11     moderate and his abilities to deal with frustration are

12     both partly from him just growing up and getting older,

13     and as we know the brain of an almost 23-year-old is

14     really different than the brain of an 18-year-old.  But

15     also, he's been engaged in doing behavioral therapy,

16     cognitive behavioral therapy, with ROCA and we've

17     talked a lot about that and he's talked a lot about

18     that and I think that's one of the tools that he's been

19     using in addition to growing up to be able to deal with

20     stresses in his life and to be able to help himself

21     deal with frustrations and deal with the sometimes I

22     think feeling like the never-ending bureaucracies he

23     has to deal with and the varieties of circumstances

24     that he has to deal with in his life.

25          He has been -- he grew up in Dorchester, and he

1    has managed to extract himself from the neighborhood

2    that he grew up in. He has managed to get himself what

3    originally was an internship, it was a three month

4    internship that was full-time at Work and Gear, that he

5    did so well there that they offered him a salaried

6    position with benefits, and the CEO of the company is

7    actually paying for his school for his college.  He's

8    enrolled to get a two year associate's degree and has

9    plans to go to a four-year college after that.

10         When at lunch today, part of what we talked about

11   is that he would be a great candidate once he finishes

12   his associate's degree to get great scholarships from

13   great schools, to get a four-year degree from a

14   prestigious university because his life story so far is

15   compelling, is transformative and he's come through a

16   lot and he's standing and he brings a smile with him

17   when he meets people and he has a great disposition.

18   He is friendly and kind.

19         He was in this relationship for a year and a half

20   with a woman who they were not well suited for each

21   other, and it was a situation where I think it's very

22   hard to tell, as the Court knows, it's very hard to

23   tell in retrospect when you're talking to people about

24   what happened in a situation.  Without a video camera,

25   we don't know exactly what happened.  But it certainly

1    does seem like this was a situation where his ex-
2    girlfriend was a person who was using the police and
3    the courts to settle interpersonal disputes not because
4    a crime was committed, but that was because that was a
5    tool that she had available to her in that time.
6        We had repeated meetings with her and Mr. Jackson,
7    with DA investigators and assistant district attorneys
8    in the Roxbury division.  And most importantly though
9    that relationship has been over eight or nine months.
10   They don't speak to each other anymore.  They've moved
11   on from each other's lives and tellingly to the Court,
12   there's been no allegation of any kind again since then
13   and I think that that's reflective of him and being out
14   of that relationship as being a positive thing for him.
15       One thing Mr. Jackson said to Ms. Ellison and Mr.
16   Bispham when we were meeting after some very hard
17   things that were happening in his life in his old
18   neighborhood is talking about what it's been like to
19   have "no" be the answer to so many things he wants to
20   do and just wants the answer to be yes more.  And he
21   has done a tremendous of work to get himself in a
22   situation where people are saying yes to him now, and
23   that's happening at work, it's happening in his
24   interpersonal relationships. His mom has moved out of
25   the old neighborhood that he lived and that's been

1        helpful to maintain his relationship with her without

2        being at risk for going to see his family.  He's done a

3        tremendous amount of work and I'm really proud of him

4        and I'd ask the Court to adopt this recommendation.

5            THE PROBATION OFFICER:  Just to clarify in regards

6        to probation's recommendations.  I know he's

7        participating with ROCA.  In regards to the anger

8        management/cognitive therapy piece, I do feel like ROCA

9        with this programming, if he continues -- if we could

10       put that as a condition specifically I do think -- and

11       I've conferred with the ROCA staff that is something

12       they could address in those areas versus formally going

13       to anger management.

14           THE COURT:  Right, so you're saying instead of the

15       anger management continue the CBT there.

16           THE PROBATION OFFICER:  Yes, Your Honor.

17           MR. BISPHAM:  And I do have specific conditions

18       that the Commonwealth suggests.

19           One, that he maintain or seek employment or

20       continue in school and stay away from Castlegate.  That

21       he set up a meeting with myself and with Attorney

22       Raisler-Cohn at least three times a month to check in

23       on his progress during the pendency of the probation.

24       And the recommendation that we jointly would be making

25       would be that so the probation is three years. We'd

1   like to structure it somewhat of a stepdown fashion in
2   that after a year if he has no new arrests or any
3   issues that he can petition the Court that it become
4   administrative and that after two years, he could
5   petition the Court again if he has no issues in the
6   next two years to terminate it earlier than that.
7       THE COURT:  Mr. Jackson, what do you want to say?
8           THE DEFENDANT:  Nothing.  I think he covered
9       everything, honestly.
10      THE COURT:  All right.  So I'll accept that agreed
11  upon recommendation.
12      MR. RAISLER-COHN:  I would -- so Mr. Jackson has
13  been working for five months.  He pays rent, he pays
14  bills, he pays for his transportation and he bought a
15  car to be able to drive to Quincy.  I would ask while
16  he remains in good standing with probation if we could
17  waive the probation supervision fees.  HE hasn't been
18  able to save any money.
19      THE COURT:  You can present that to the first
20  session judge with an affidavit about his inability to
21  pay.
22      MR. RAISLER-COHN:  That's fine.  Thank you.
23      THE CLERK:  Mr. Jackson, as to docket number 2013-
24  11012, the Court finds you in violation of only failure
25  to do your community service in that matter.  The Court

1    also terminates this probation in 2013-11012. Are there

2    any fees outstanding, Officer Ellison?

3         THE PROBATION OFFICER:  No, just the community

4    service obligation.

5         THE CLERK:  So the community obligation is vacated

6    at this time.  And as to docket 2015-11278, the Court

7    having accepted your plea on offense 01 sentences you

8    to a probation term of three years with the following

9    conditions of probation:

10         That you continue with your programming with ROCA,

11    that you stay away from Castlegate, that you continue

12    to do periodic check-ins with the district attorney's

13    office and your attorney.

14         THE COURT:  He can do that voluntarily.

15         THE CLERK:  And continue employment. If after one

16    year of successful probation you successfully complete

17    these terms, probation will be stepped down to

18    administrative, and after two years of successful

19    probation, you may petition to have your probation

20    terminated early.

21         There's a $90 victim witness fee, $110 DNA fee and

22    a $65 a month probation service fee.  You must see

23    probation when you finish.

24         MR. RAISLER-COHN:  I would ask if we could waive

25    the attorney fee.

1
2        THE COURT:  No, I'm not going to waive the
3   attorney's fees.
4        THE CLERK:  Mr. Jackson, the Commonwealth moves to
5   dismiss offenses two and three with your assent?
6   Hundred fifty legal counsel fee is waived, and offenses
7   two and three are dismissed.  You need to see Ms.
8   Ellison to sign a new contract.
9        THE COURT:  Good luck, sir.
10
11   (Court in recess.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T I O N

I, CHRISTINE D. BLANKENSHIP, NOTARY PUBLIC, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT FROM THE RECORD OF THE COURT PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

I, CHRISTINE D. BLANKENSHIP, FURTHER CERTIFY THAT THE FOREGOING IS IN COMPLIANCE WITH THE ADMINISTRATIVE OFFICE OF THE TRIAL COURT DIRECTIVE ON TRANSCRIPT FORMAT.

I, CHRISTINE D. BLANKENSHIP, FURTHER CERTIFY THAT I NEITHER AM COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THIS ACTION.


*Christine D. Blankenship, January 18, 2022*
CHRISTINE D. BLANKENSHIP, NOTARY PUBLIC
                         ANSCRIPT PRODUCED FROM COMPUTER


My commission expires: 8/3/2023

**A**

**Abilities** - 23:10, 23:11
**Able** - 22:5, 23:19, 23:20, 27:15, 27:18
**Accept** - 18:11, 27:10
**Acceptance** - 12:2
**Accepted** - 28:7
**Accusers** - 7:19
**Acted** - 15:11
**ADA** - 21:25
**Addition** - 23:19
**Address** - 26:12
**Administrative** - 27:4, 28:18
**Admission** - 12:3
**Admit** - 16:9
**Admittedly** - 20:21
**Admitting** - 14:17
**Adopt** - 26:4
**Adrien** - 3:9
**Advice** - 15:9
**Advise** - 11:2, 12:1
**Advised** - 12:13
**Affidavit** - 27:20
**Afternoon** - 3:9, 3:13, 3:14
**Against** - 6:22
**Agreed** - 27:10
**Agreeing** - 17:13, 17:15
**Alcohol** - 6:7
**Allegation** - 25:12
**Allston** - 20:14
**Altercations** - 17:9
**Amount** - 23:8, 26:3
**Anger** - 22:19, 22:24, 26:7, 26:13, 26:15
**Anticipate** - 18:1
**Anymore** - 25:10
**Anytime** - 5:11
**Anyway** - 18:9
**Apartment** - 20:14, 22:14
**Appeal** - 8:10
**Approach** - 3:17
**Approached** - 13:12, 13:13
**Approximately** - 13:22
**Area** - 17:6, 20:12
**Areas** - 26:12
**Argument** - 17:3, 17:12, 17:17, 17:18
**Arguments** - 8:6
**Armed** - 3:22, 4:1, 4:8, 11:3, 19:7
**Arraigned** - 16:22
**Arrest** - 14:12
**Arrested** - 14:13, 14:16, 17:5, 17:14, 17:20
**Arrests** - 27:2
**Arrival** - 13:2
**Assent** - 29:5

**Assistant** - 5:24, 25:7
**Associate's** - 24:8, 24:12
**Associating** - 20:16
**Attempting** - 20:15
**Attorney** - 4:13, 5:12, 7:20, 8:6, 8:22, 9:21, 12:13, 20:2, 23:1, 26:21, 28:13, 28:25
**Attorneys** - 25:7
**Attorney's** - 15:8, 28:12, 29:3
**August** - 16:22
**Available** - 25:5
**Aware** - 6:4, 9:13

**B**

**Back** - 9:8, 9:18, 19:1, 22:6
**Barry** - 14:4, 14:9, 14:18
**Become** - 27:3
**Behavioral** - 19:25, 23:15, 23:16
**Beneficial** - 22:25
**Benefit** - 18:21, 22:19
**Benefits** - 24:6
**Bills** - 27:14
**BISPHAM** - 3:9, 3:10, 4:23, 10:15, 12:22, 18:1, 19:13, 19:18, 25:16, 26:17
**Black** - 13:8, 13:9
**BMC** - 16:22
**Board** - 21:22
**Boots** - 13:9
**Boston** - 12:24, 14:10
**Both** - 23:12
**Bought** - 27:14
**Box** - 4:13
**BPS** - 5:8
**Brain** - 23:13, 23:14
**Brings** - 24:16
**Brought** - 20:17
**Bureaucracies** - 23:22

**C**

**Call** - 6:21, 7:24, 12:25
**Called** - 3:1, 11:3, 11:24, 13:23, 17:5
**Calm** - 22:5
**Camera** - 24:24
**Can** - 5:12, 16:7, 18:11, 19:19, 20:7, 27:3, 27:19, 28:14
**Candidate** - 24:11
**Car** - 12:25, 13:4, 13:5, 13:11, 13:15, 13:17, 13:25, 14:1, 19:14, 27:15
**Career** - 11:3
**Carjacking** - 4:1, 4:3
**Case** - 3:7, 4:24, 8:7, 8:11,

10:5, 12:22, 19:20, 21:16
**Cases** - 19:23
**Castlegate** - 20:13, 26:20, 28:11
**CBT** - 26:15
**Cedar** - 13:1
**CEO** - 24:6
**Certainly** - 23:5, 24:25
**Challenging** - 23:5
**Chance** - 18:12
**Change** - 3:7, 3:19, 4:4, 12:17
**Changes** - 23:10
**Charge** - 6:23, 7:14, 9:19, 9:20
**Charged** - 17:21, 19:4
**Charges** - 3:25, 4:8
**Charging** - 3:22
**Check** - 22:25, 26:22, 28:12
**Chief** - 20:18
**Children** - 5:16
**Circumstances** - 23:23
**Citizen** - 12:1
**Clarify** - 5:16
**CLERK** - 3:3, 3:18, 3:21, 3:25, 4:4, 4:7, 4:10, 4:14, 19:6, 27:23, 28:5, 28:15, 29:4
**Cognitive** - 19:25, 23:16
**COHN** - 3:11, 3:17, 4:2, 4:6, 10:12, 15:16, 21:17, 23:1, 23:2, 26:22, 27:12, 27:22, 28:24
**College** - 20:5, 24:7, 24:9
**Combination** - 11:19
**Come** - 22:6, 22:23, 24:15
**Committed** - 14:25, 25:4
**Committing** - 10:20
**Commonwealth** - 3:4, 3:10, 6:22, 7:6, 7:13, 9:24, 12:23, 21:12, 26:18, 29:4
**Commonwealth's** - 20:25
**Community** - 16:23, 18:20, 18:23, 27:25, 28:3, 28:5
**Company** - 24:6
**Compelling** - 24:15
**Complete** - 16:23, 28:16
**Completed** - 22:10
**Condition** - 6:2, 6:5, 10:19, 26:10
**Conditions** - 26:17, 28:9
**Conferred** - 26:11
**Confront** - 7:18, 16:12
**Confused** - 15:25
**Consequences** - 12:3, 15:15
**Consider** - 18:6
**Consistently** - 19:23,

19:24, 20:23
**Constitutional** - 9:3
**Consumed** - 6:7
**Continue** - 18:13, 21:5, 21:7, 26:15, 26:20, 28:10, 28:11, 28:15
**Continued** - 20:1
**Continues** - 26:9
**Contract** - 29:8
**Conversations** - 20:19, 22:2
**Convicted** - 11:4, 11:8, 11:12, 11:17
**Conviction** - 12:9
**Convinces** - 7:6
**Corner** - 13:6, 14:5
**Correction** - 19:8
**Couldn't** - 6:21
**Counsel** - 15:14, 29:6
**Count** - 4:2, 19:9
**Counts** - 17:22, 19:6, 19:7
**Couple** - 22:1
**Courts** - 25:3
**Covered** - 27:8
**Credit** - 16:25
**Crime** - 10:20, 11:4, 25:4
**Crimes** - 11:18
**Criminal** - 11:3
**Currently** - 5:21, 20:4

**D**

**DA** - 25:7
**Database** - 15:20
**Dated** - 16:19
**Day** - 13:22
**Deal** - 23:6, 23:7, 23:11, 23:19, 23:21, 23:23, 23:24
**December** - 16:20
**Decide** - 6:16, 12:8
**Decisions** - 8:10
**Defendant's** - 8:17
**Defense** - 16:16
**Degree** - 24:8, 24:12, 24:13
**Demanded** - 13:14
**Denial** - 12:10
**Denied** - 17:8
**Denying** - 14:18
**Depicted** - 14:6
**Deportation** - 12:3, 12:10
**Described** - 13:6, 13:15, 14:7
**Detectives** - 13:25, 14:4, 14:16
**Different** - 23:14
**Dismiss** - 29:5
**Dismissed** - 4:24, 17:10, 29:7
**Disposed** - 17:22
**Disposition** - 18:2, 24:17

**Disputes -** 25:3
**District -** 17:10, 17:21, 25:7, 28:12
**Division -** 25:8
**DNA -** 15:19, 28:21
**Docket -** 3:5, 4:7, 27:23, 28:6
**Document -** 8:17, 8:18
**Don't -** 4:12, 5:9, 5:11, 9:18, 18:6, 19:1, 24:25, 25:10
**Dorchester -** 23:25
**Doubt -** 6:24, 7:7, 7:14, 9:25
**Drive -** 27:15
**Driver's -** 13:14, 13:18, 14:2
**Drug -** 11:5, 11:9, 11:13, 11:18
**Drugs -** 6:10
**Dudley -** 17:6
**Duplicative -** 4:3

**E**

**Each -** 6:23, 8:13, 24:20, 25:10, 25:11
**Earlier -** 27:6
**Early -** 28:20
**Eight -** 3:3, 25:9
**Element -** 6:23
**Elements -** 9:23, 10:2
**Ellison -** 23:9, 25:15, 28:2, 29:8
**Email -** 22:8
**Employment -** 26:19, 28:15
**Ending -** 23:22
**Engaged -** 20:1, 23:15
**Enrolled -** 20:5, 24:8
**Enter -** 13:6
**Entered -** 14:6
**Entire -** 18:17
**Entitled -** 8:17
**Essentially -** 14:21, 20:9, 21:3
**Everybody -** 5:25
**Everything -** 16:3, 21:13, 27:9
**Evidence -** 7:25
**Ex -** 25:1
**Example -** 6:20
**Exclusion -** 12:3
**Exited -** 13:11, 13:19
**Expect -** 12:23
**Expects -** 21:6
**Explain -** 9:23
**Explained -** 8:14, 9:14
**Exterior -** 14:1
**Extract -** 24:1

**F**

**Face -** 11:6, 11:11, 11:16, 16:12
**Facing -** 7:20
**Failure -** 16:23, 27:24
**Fairly -** 22:1
**Family -** 16:21, 26:2
**Far -** 5:5, 16:1, 24:14
**Fashion -** 27:1
**Federal -** 12:6, 12:8
**Fee -** 28:21, 28:22, 28:25, 29:6
**Feel -** 18:21, 26:8
**Feeling -** 23:22
**Feelings -** 22:23
**Fees -** 27:17, 28:2, 29:3
**Fifteen -** 11:7, 11:11
**Fifty -** 29:6
**File -** 22:21
**Filed -** 8:7
**Final -** 3:6
**Find -** 7:12, 18:25
**Finds -** 27:24
**Fine -** 18:8, 27:22
**Fingerprints -** 14:1
**Finishes -** 24:11
**Firearm -** 14:19, 14:20
**First -** 14:7, 19:8, 19:13, 21:16, 27:19
**Five -** 27:13
**Fled -** 13:20
**Flip -** 9:7
**Following -** 28:8
**Force -** 15:3
**Form -** 8:18, 9:14
**Formally -** 26:12
**Forth -** 9:1
**Found -** 7:5, 10:24, 14:20
**Four -** 24:9, 24:13
**Frankness -** 18:12
**Freely -** 16:6
**Friendly -** 24:18
**Front -** 13:18
**Frustrated -** 22:5
**Frustration -** 23:11
**Frustrations -** 23:21
**Full -** 24:4
**Fully -** 20:8
**Further -** 21:2
**Future -** 11:5, 20:4, 22:3

**G**

**Gear -** 5:21, 20:6, 24:4
**GED -** 5:6
**Get -** 13:14, 15:5, 20:16, 24:2, 24:8, 24:12, 24:13, 25:21
**Gets -** 22:4, 22:22
**Girlfriend -** 17:3, 17:7,

**Girlfriend's -** 17:4
**Give -** 8:13, 11:24, 12:19, 21:4, 21:8, 21:12
**Given -** 16:25, 18:1, 18:4, 18:9, 20:19, 21:2, 21:12
**Glasses -** 13:7, 14:13
**Go -** 5:5, 5:7, 5:13, 8:22, 9:19, 9:20, 16:7, 19:1, 20:8, 24:9
**Going -** 8:16, 10:18, 16:8, 18:3, 18:5, 18:9, 20:20, 20:23, 21:5, 22:3, 26:2, 26:12, 29:2
**Gone -** 19:25
**Good -** 3:9, 3:13, 3:14, 27:16, 29:9
**Got -** 5:6, 13:17, 13:20, 19:8, 22:7
**Graduate -** 21:6
**Grew -** 23:25, 24:2
**Growing -** 23:12, 23:19
**Grown -** 22:13
**Guilt -** 6:16, 12:6
**Guilty -** 3:24, 4:9, 6:14, 6:23, 7:5, 7:7, 7:12, 7:14, 8:4, 9:4, 11:22, 12:2, 14:24, 15:3, 15:6, 15:18, 15:23, 16:4
**Gun -** 13:16, 14:20

**H**

**Half -** 21:24, 24:19
**Hallways -** 5:13
**▮▮▮▮▮▮▮▮▮▮▮▮▮▮**
**Hand -** 4:10, 8:16
**Happening -** 25:17, 25:23
**Hard -** 22:22, 24:22, 25:16
**Hasn't -** 20:22, 27:17
**Haven't -** 17:16
**Hear -** 14:22
**Heard -** 21:15, 22:14
**Heavy -** 13:9
**Help -** 23:20
**Helpful -** 26:1
**Hiccups -** 22:1
**High -** 5:7
**Hire -** 22:9
**Hit -** 13:24
**Hold -** 6:22
**Honestly -** 27:9
**Honor -** 3:3, 3:9, 12:22, 14:21, 17:25, 18:1, 19:15, 19:19, 23:2, 26:16
**Hoping -** 22:10
**Hours -** 6:8, 6:10, 6:12, 16:24, 16:25, 18:21, 18:23
**House -** 19:8
**Household -** 16:21

**17:8,** 25:2

**Hundred -** 29:6

**I**

**I'd -** 26:4
**Identified -** 13:3, 14:4, 14:7, 14:9
**Identifying -** 14:18
**I'll -** 5:10, 5:11, 11:24, 12:19, 27:10
**Illness -** 6:2, 6:4
**I'm -** 4:20, 5:24, 8:16, 17:7, 17:23, 18:10, 22:10, 26:3, 29:2
**Immigration -** 11:25
**Importantly -** 25:8
**Impose -** 10:17
**Imposed -** 10:19
**Inability -** 27:20
**Incarcerating -** 21:2
**Indicated -** 13:4, 20:21
**Indicted -** 19:7
**Indictment -** 3:21, 4:5, 9:5, 9:21
**Indictments -** 3:19
**Individualized -** 14:2
**Inevitable -** 12:9
**Initial -** 16:20
**Innocence -** 6:16
**Inquire -** 3:15
**Ins -** 28:12
**Interest -** 15:12
**Interests -** 20:3
**Internship -** 22:10, 24:3, 24:4
**Internships -** 19:24
**Interpersonal -** 25:3, 25:24
**Interview -** 14:16
**Investigators -** 25:7
**Involvement -** 14:17
**Issues -** 27:3, 27:5
**It's -** 6:22, 8:17, 9:19, 11:2, 16:20, 17:7, 17:10, 17:21, 18:13, 19:20, 20:21, 20:24, 21:13, 22:25, 24:21, 24:22, 25:18, 25:23
**I've -** 8:14, 16:1, 16:3, 21:23, 22:2, 23:3, 26:11

**J**

**Jacksons' -** 18:4
**Jail -** 17:18
**Job -** 5:20, 20:5
**Jointly -** 18:3, 26:24
**Josh -** 3:11
**Judge -** 7:11, 7:12, 7:13, 8:11, 10:24, 27:20
**July -** 12:24

**Jurors** - 7:6
**Jury** - 6:16, 6:21, 7:3, 7:5, 7:11

### K

**Knife** - 13:17
**Knowingly** - 16:7
**Known** - 23:3
**Knows** - 24:22

### L

**Lack** - 20:10
**Larceny** - 19:3, 19:5, 19:9
**Later** - 10:24, 13:3
**Legal** - 29:6
**Liquor** - 13:1, 13:6, 14:5
**List** - 3:4
**Lived** - 25:25
**Lives** - 23:8, 25:11
**Lojack** - 13:24
**Long** - 22:8, 22:23
**Longer** - 20:13
**Look** - 19:15
**Looking** - 21:4, 22:9
**Lot** - 23:17, 24:16
**Luck** - 29:9
**Lunch** - 24:10

### M

**Maintain** - 26:1, 26:19
**Majority** - 19:22
**Making** - 26:24
**Male** - 13:9
**Man** - 22:13
**Managed** - 24:1, 24:2
**Management** - 22:19, 22:24, 26:13, 26:15
**Management/
Cognitive** - 26:8
**Mandates** - 12:7
**Mandatory** - 10:10
**Many** - 22:2, 25:19
**Marketing** - 5:24
**Married** - 5:18
**Massachusetts** - 13:23, 15:19, 21:8
**Maximum** - 10:4, 10:7, 10:25
**Medication** - 6:12
**Meeting** - 25:16, 26:21
**Meetings** - 25:6
**Meets** - 24:17
**Member** - 16:21
**Mental** - 6:1, 6:2, 6:4, 6:5
**Met** - 20:2, 20:18
**Minimum** - 10:11
**Moderate** - 23:11
**Mom** - 25:24
**Money** - 27:18

**Month** - 24:3, 26:22, 28:22
**Months** - 25:9, 27:13
**Morning** - 3:14
**Motions** - 8:6
**Move** - 21:7
**Moved** - 23:4, 25:10, 25:24
**Moves** - 29:4
**Moving** - 20:11
**Much** - 4:7, 22:12
**Multiple** - 5:8

### N

**Narrow** - 22:11
**Naturalization** - 12:10
**Neighborhood** - 24:1, 25:18, 25:25
**New** - 4:18, 4:21, 4:23, 18:5, 18:18, 18:19, 20:22, 27:2, 29:8
██████████
**Nine** - 3:3, 25:9
**Nobody** - 17:17
**Notice** - 16:19
**Numbers** - 3:3

### O

**Obligation** - 28:4, 28:5
**Observed** - 13:5
**Occasions** - 20:3
**Occupants** - 13:14
**Offense** - 3:21, 3:25, 4:19, 11:5, 11:9, 12:5, 16:4, 18:5, 18:18, 18:19, 21:11, 28:7
**Offenses** - 11:13, 11:18, 11:19, 20:22, 21:10, 29:5, 29:6
**Offer** - 3:18, 4:4
**Offered** - 24:5
**Office** - 28:13
**Officers** - 13:3, 13:22, 14:10, 17:9
**Officials** - 12:8
**Old** - 5:3, 23:13, 23:14, 25:17, 25:25
**Older** - 22:12, 23:12
**One** - 4:3, 4:5, 4:22, 9:19, 10:9, 11:8, 12:6, 13:6, 13:12, 13:16, 14:3, 19:13, 21:15, 23:18, 25:15, 26:19, 28:15
**Ones** - 14:14
**Opened** - 19:20
**Opinion** - 20:25
**Order** - 3:1
**Originally** - 19:6, 24:3
**Other's** - 25:11

**Outstanding** - 28:2
**Overwhelmed** - 22:22
**Own** - 7:24, 7:25, 8:1, 16:16, 20:14, 22:13, 22:14

### P

**Participate** - 7:4
**Participated** - 14:15
**Participating** - 26:7
**Parties** - 3:7
**Passenger** - 13:13, 13:18, 13:19
**Past** - 6:8, 6:10, 6:12, 13:5, 22:20
**Path** - 22:3
**Pay** - 27:21
**Paying** - 20:8, 24:7
**Pays** - 27:13, 27:14
**Penalty** - 10:4, 10:7, 10:25
**Pendency** - 19:21, 26:23
**People** - 7:3, 20:15, 23:6, 24:17, 24:23, 25:22
**Perfect** - 20:22
**Perform** - 18:23
**Period** - 10:18, 20:21
**Periodic** - 28:12
**Person** - 13:8, 13:12, 13:13, 13:16, 14:14, 19:3, 19:10, 25:2
**Personal** - 20:3
**Perspective** - 20:25
**Petition** - 27:3, 27:5, 28:19
**Physical** - 17:8
**Picked** - 20:22
**Piece** - 26:8
**Placed** - 19:10
**Plans** - 24:9
**Plea** - 3:7, 3:19, 3:23, 4:4, 12:2, 12:17, 16:6, 21:19, 28:7
**Plead** - 4:8, 9:4, 11:22, 15:3, 15:6, 15:23, 16:4
**Pleading** - 6:14, 8:4, 9:19, 12:5, 12:21, 14:24, 15:18
**Podium** - 16:8
**Police** - 12:24, 13:24, 14:11, 17:5, 25:2
**Position** - 24:6
**Positive** - 20:23, 22:19, 25:14
**Possession** - 14:13, 14:19
**Practically** - 12:9
**Present** - 3:2, 3:12, 7:25, 17:4, 27:19
**Present/Not** - 3:2
**Presented** - 21:13
**Prestigious** - 24:14

**Presumptively** - 12:6
**Previously** - 11:8, 11:12, 11:17
**Print** - 14:3
**Prior** - 19:5
**Prison** - 11:6, 11:7, 11:17
**Privacy** - 5:13
**Probation's** - 26:6
**Proceed** - 12:23
**Processed** - 13:25
**Processing** - 22:23
**Produced** - 7:13
**Productive** - 22:6
**Programming** - 26:9, 28:10
**Programs** - 19:25
**Progress** - 26:23
**Promise** - 15:5
**Prosecution** - 4:25
**Prosecutor** - 12:19
**Proud** - 26:3
**Provided** - 17:20
**Providing** - 20:7
**Pursuant** - 12:4
**Pursue** - 8:5

### Q

**Questioning** - 7:20
**Quincy** - 5:22, 20:5, 27:15

### R

**Raise** - 4:10
**RAISLER** - 3:11, 3:17, 4:2, 4:6, 10:12, 15:16, 21:17, 23:1, 23:2, 26:22, 27:12, 27:22, 28:24
**Reason** - 19:16, 19:18
**Reasonable** - 6:24, 7:7, 7:14, 9:25
**Received** - 13:24
**Recommend** - 18:3, 21:14, 22:15
**Recommendation** - 21:1, 21:12, 21:18, 26:4, 26:24, 27:11
**Recommendations** - 26:6
**Recommending** - 19:17, 19:18
**Recovered** - 13:25, 14:1, 14:4, 14:20
**Red** - 13:8
**Reduced** - 19:9
**Reflective** - 25:13
**Regards** - 21:19, 22:3, 26:5, 26:7
**Regroup** - 22:5
**Relationship** - 24:19, 25:9, 25:14, 26:1
**Relationships** - 25:24

**Relative -** 13:24
**Remains -** 27:16
**Removal -** 12:7, 12:8
**Rent -** 27:13
**Repeated -** 25:6
**Report -** 12:25
**Reporting -** 10:20
**Reports -** 19:14, 22:4
**Required -** 15:18, 18:23
**Responded -** 12:25
**Response -** 5:11
**Responsibilities -** 22:13
**Result -** 12:10
**Retrospect -** 24:23
**Rights -** 8:14, 8:17, 9:4, 9:14, 9:15, 9:16
**Risk -** 26:2
**Road -** 22:1
**Robbed -** 13:1
**Robbery -** 3:22, 4:3, 4:8, 19:4, 19:7, 19:12
**ROCA -** 19:24, 20:1, 23:16, 26:7, 26:8, 26:11, 28:10
**Roxbury -** 4:24, 13:2, 16:22, 17:6, 25:8
**Rulings -** 8:10

| S |
|---|

**Salaried -** 24:5
**Saliva -** 15:19
**Sample -** 15:19
**Satisfied -** 15:8
**Save -** 27:18
**Scholarships -** 24:12
**School -** 5:5, 5:7, 20:5, 20:8, 21:5, 22:18, 24:7, 26:20
**Schools -** 5:8, 24:13
**Sean -** 14:4, 14:9
**Seat -** 4:13, 13:18, 13:19
**Seaver -** 13:23
**Second -** 13:8, 14:9, 14:18, 19:9
**See -** 19:19, 22:21, 26:2, 28:22, 29:7
**Seek -** 12:8, 26:19
**Seen -** 8:18, 23:10
**Selected -** 7:4
**Selection -** 7:5
**Self -** 23:10
**Sentences -** 28:7
**Serious -** 11:4, 11:8, 11:13, 11:18, 21:10, 21:11
**Served -** 21:1
**Service -** 16:23, 18:20, 18:23, 27:25, 28:4, 28:22
**Session -** 21:16, 27:20
**Set -** 26:21
**Sets -** 9:1

**Settle -** 25:3
**Sever -** 20:15
**She's -** 23:10
**Shirt -** 13:8, 13:9
**Shoot -** 13:15
**Shop -** 22:7
**Shortly -** 13:10
**Shorts -** 13:8
**Side -** 13:13, 13:14, 14:2, 23:5
**Sign -** 9:10, 29:8
**Signature -** 9:7, 9:8
**Signing -** 9:12
**Similar -** 14:14
**Sister -** 17:4
**Site -** 17:6
**Situation -** 24:21, 24:24, 25:1, 25:22
**Situations -** 20:17
**Slim -** 13:7
**Smile -** 24:16
**Somewhat -** 27:1
**Specific -** 26:17
**Staff -** 26:11
**Stand -** 6:20
**Standing -** 24:16, 27:16
**State -** 11:7, 11:17, 13:24
**Statement -** 12:20
**Stating -** 22:8
**Statute -** 11:3, 11:5
**Statutory -** 9:4
**Stay -** 26:20, 28:11
**Step -** 4:12
**Stepdown -** 27:1
**Stepped -** 23:4, 28:17
**Stipulate -** 16:9
**Stipulation -** 17:11, 18:11
**Stolen -** 13:25
**Store -** 13:1, 13:6, 13:11, 14:5, 14:6
**Story -** 24:14
**Straight -** 22:11
**Street -** 13:1, 13:2, 13:21, 13:23, 17:6
**Stresses -** 23:20
**Strikeforce -** 14:10
**Strongly -** 21:14
**Structure -** 27:1
**Substantial -** 11:6
**Successful -** 28:16, 28:18
**Successfully -** 28:16
**Suffered -** 6:1
**Suffering -** 6:5
**Suffolk -** 14:8
**Suggests -** 26:18
**Suited -** 24:20
**Superior -** 14:8
**Supervision -** 27:17
**Supposed -** 22:4
**Surrender -** 3:6

**Suspect -** 14:7, 14:9, 14:18
**Suspects -** 13:10, 13:20
**Swear -** 4:14
**Sweatpants -** 13:10
**Sworn -** 4:11, 4:17

| T |
|---|

**Table -** 19:1
**Telling -** 9:13, 14:24
**Tellingly -** 25:11
**Ten -** 11:11
**Tended -** 20:16
**Term -** 11:6, 28:8
**Terminate -** 18:4, 27:6
**Terminated -** 28:20
**Terminates -** 28:1
**Terms -** 6:16, 10:19, 22:15, 23:9, 28:17
**That's -** 10:10, 17:11, 18:10, 21:17, 23:18, 25:13, 25:23, 25:25, 27:22
**Therapy -** 19:25, 22:24, 23:15, 23:16, 26:8
**There's -** 10:10, 17:15, 18:10, 18:12, 19:6, 25:12, 28:21
**These -** 8:14, 11:19, 12:13, 12:21, 21:9, 28:17
**They're -** 22:9
**They've -** 25:10
**Third -** 19:12
**Threatening -** 13:15
**Three -** 10:15, 11:7, 11:17, 11:18, 19:21, 20:10, 20:20, 21:23, 21:24, 23:3, 24:3, 26:22, 26:25, 28:8, 29:5, 29:7
**Ties -** 20:15
**Time -** 5:9, 16:24, 17:5, 17:8, 17:10, 19:21, 19:22, 20:11, 20:24, 21:2, 22:7, 22:22, 24:4, 25:5, 28:6
**Times -** 22:18, 26:22
**Today -** 8:5, 20:18, 21:20, 24:10
**Today's -** 3:4
**Tool -** 25:5
**Tools -** 23:18
**Total -** 16:24
**Towards -** 13:20
**Trajectory -** 20:23
**Transformative -** 24:15
**Transportation -** 27:14
**Tremendous -** 23:8, 25:21, 26:3
**Trial -** 6:15, 6:19, 7:18, 7:24, 12:23
**Turning -** 21:3
**Twenty -** 5:4

**Two -** 3:19, 3:25, 5:4, 11:12, 11:13, 13:5, 13:10, 13:19, 14:6, 17:22, 19:6, 19:7, 21:6, 24:8, 27:4, 27:6, 28:18, 29:5, 29:7
**Tykeam -** 3:4, 4:11, 5:2, 14:3, 14:7

| U |
|---|

**Unit -** 20:18
**United -** 12:4, 12:7, 12:11
**University -** 24:14
**Unless -** 7:6, 7:12
**Using -** 23:19, 25:2

| V |
|---|

**Vacated -** 28:5
**Varieties -** 23:23
**Vehicle -** 13:19, 13:20
**Versus -** 3:4, 26:12
**Victim -** 17:7, 28:21
**Video -** 14:5, 14:15, 24:24
**Violated -** 16:20
**Violation -** 4:18, 4:21, 4:23, 10:24, 11:8, 16:9, 17:1, 17:12, 18:7, 18:11, 18:13, 18:16, 18:17, 18:18, 18:22, 18:25, 27:24
**Violence -** 14:10
**Violent -** 11:4, 11:13, 11:18
**Voluntarily -** 9:10, 9:15, 16:7, 28:14

| W |
|---|

**Waiver -** 8:17
**Waiving -** 9:16
**Walked -** 13:5, 13:11
**Wants -** 20:4, 21:7, 25:19, 25:20
**Warnings -** 11:25, 12:14
**Warrant -** 14:12
**Washington -** 13:2, 13:21
**Wearing -** 13:7
**We'd -** 26:25
**We're -** 4:2, 19:18, 21:4
**Weren't -** 17:9
**We've -** 23:16
**What's -** 10:7, 10:13, 19:16, 21:18
**White -** 13:7
**Who's -** 3:12
**Will -** 11:6, 15:18, 15:22, 18:2, 18:15, 18:21, 28:17
**Willing -** 8:13
**Willingly -** 16:7
**Willingness -** 9:3
**Window -** 14:2
**Wish -** 12:16, 16:4

**Withdraw -** 18:15
**Withdrawing -** 18:6
**Witness -** 4:13, 6:20, 28:21
**Witnesses -** 6:21, 7:19, 7:25, 13:15, 16:13, 16:16
**Woman -** 24:20
**Work -** 5:21, 19:24, 20:11, 20:20, 23:8, 24:4, 25:21, 25:23, 26:3
**Working -** 5:21, 20:6, 21:7, 21:23, 22:7, 22:18, 27:13
**Worn -** 14:14
**Wouldn't -** 6:19, 6:20, 6:21
**Writing -** 9:2, 9:13

**Y**

**Year -** 20:10, 20:20, 21:24, 23:13, 23:14, 24:8, 24:9, 24:13, 24:19, 27:2, 28:16
**Years -** 10:9, 11:7, 11:12, 11:16, 19:21, 21:6, 21:23, 21:25, 23:3, 26:25, 27:4, 27:6, 28:8, 28:18
**Years' -** 10:15
**You'll -** 11:5
**You're -** 6:5, 6:15, 9:13, 10:18, 14:24, 16:8, 16:12, 17:17, 19:16, 24:23, 26:14
**Youth -** 14:10
**You've -** 8:9

**$**

**$110 -** 28:21
**$65 -** 28:22
**$90 -** 28:21

**0**

**01 -** 3:22, 28:7

**1**

**11012 -** 27:24
**12 -** 7:3, 7:6
**13-11012 -** 3:5
**15 -** 11:16
**15-11278 -** 3:5, 3:21, 4:7
**18 -** 23:14
**19th -** 12:24

**2**

**20 -** 10:8, 11:16
**2013 -** 3:6, 19:7, 27:23
**2013-11012 -** 28:1
**2015 -** 3:6, 12:24, 19:20
**2015-11278 -** 28:6

**2017 -** 16:20, 16:23
**23 -** 23:13
**24 -** 6:8, 6:10, 6:12
**28 -** 16:22
**296 -** 13:23

**3**

**32 -** 16:25

**6**

**6:50 -** 13:22

**8**

**80 -** 16:24